# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### Civil Case No. 1:09-cv-00436-MR
### [Criminal Case No. 1:06-cr-00251-MR-2]

| | |
|---|---|
| CHRISTOPHER ALLEN HUNTER,   ) | |
| ) | |
| Petitioner,   ) | |
| ) | **MEMORANDUM OF** |
| vs.   ) | **DECISION AND ORDER** |
| ) | |
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Respondent.   ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1], and Respondent's Motion to Dismiss [Doc. 6].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2006, Petitioner was charged in a Bill of Indictment, along with nine co-defendants, with conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841 and 846. [Criminal Case No. 1:06-cr-00251, Doc. 3: Indictment].    Following Petitioner's initial appearance on January 31, 2007, attorney Eric J. Foster was appointed to represent Petitioner.  [Criminal Case No. 1:06-cr-00251,

Doc. 89]. On February 7, 2007, Petitioner appeared with Mr. Foster for an arraignment, at which time Petitioner entered a plea of not guilty. Mr. Foster later filed a notice of Petitioner's intent to change his plea. [Criminal Case No. 1:06-cr-00251, Doc. 114].

On February 26, 2007, Petitioner appeared with Mr. Foster for his Rule 11 hearing before the Honorable Dennis L. Howell, United States Magistrate Judge. At the hearing, Mr. Foster confirmed to the Court that Petitioner had elected to plead guilty without the benefit of a plea agreement. [Criminal Case No. 1:06-cr-00251, Doc. 274: Transcript of Plea and Rule 11 Hearing at 2]. Judge Howell then engaged in a thorough colloquy with Petitioner. In response to Judge Howell's questions, Petitioner affirmed under oath, among other things: (1) that he had reviewed the Bill of Indictment with his attorney [Id. at 6]; (2) that he was pleading guilty to Count One as contained in the Bill of Indictment [Id. at 6-7]; (3) that he understood the minimum and maximum penalties based on the amount of cocaine base alleged in the Bill of Indictment [Id. at 8-9]; (4) that he was in fact guilty of Count in the Bill of Indictment to which he was pleading [Id. at 13]; (5) that his guilty plea was voluntary and not the result of any coercion, threats or promises [Id.]; (6) that his willingness to plead guilty was not the result of any prior discussions between his attorney and the attorney for the Government [Id. at 14]; (7) that

he and the Government had not entered into a plea agreement of any kind or nature in this case [Id.]; and (8) that he had had ample time to discuss any possible defenses with his attorney [Id.]. Petitioner further affirmed that he was "entirely satisfied" with the services of his attorney. [Id.]. After thoroughly questioning Petitioner, Judge Howell found that the plea of guilty was knowingly and voluntarily made, and he therefore accepted Petitioner's guilty plea. [Criminal Case No. 1:06-cr-00251, Doc. 127: Rule 11 Inquiry and Order of Acceptance of Unwritten Plea at 8].

Following Petitioner's guilty plea, a presentence investigation report (PSR) was prepared. In the PSR, the Probation Officer concluded that Petitioner was responsible for at least 500 grams of cocaine base. [Criminal Case No. 1:06-cr-00251, Doc. 245: PSR at 7].

On December 31, 2007, Petitioner's counsel moved to withdraw from further representation citing his exit from private practice and imminent employment with the North Carolina Public Defender's Office. [Criminal Case No. 1:06-cr-00251, Doc. 204]. This motion was allowed and Petitioner was appointed new counsel, Janna Allison. [Criminal Case No. 1:06-cr-00251, Doc. 205]. Following her appointment, Ms. Allison filed several objections to the PSR, particularly to the findings regarding the drug quantity

attributed to Petitioner.  [Criminal Case No. 1:06-cr-00251, Doc. 244: Objections to Presentence Report].

The parties appeared before the Honorable Lacy H. Thornburg, United States District Judge, for a sentencing hearing on April 23, 2008.[1]  In objecting to the amount of drugs attributable to Petitioner, Ms. Allison argued that the 500 grams attributed to Petitioner in the plea agreement was an amount ascertained solely from statements by Petitioner during his debriefing to DEA agents during his cooperation, and that because such statements were made while providing assistance to the Government, they should not be used to increase his punishment.  Ms. Allison further argued as follows:

> [T]his case is different from any case that I've ever seen before.  I've never seen a straight-up plea agreement [sic] with an open-ended drug amount. This is a case that I was appointed after Mr. Foster went to the public defender's office.  But it was a straight-up plea and the amount was at least 50 grams that he was held accountable for.  And, perhaps, that's part of the problem here.

[Criminal Case No. 1:06-cr-00251, Doc. 275: Transcript of Sentencing Hearing at 6].  In response, the attorney for the Government stated to the Court as follows:

---

[1]Judge Thornburg has since retired, and this case was reassigned to the undersigned.

> I, too, am I [sic] little puzzled by this was [sic] a straight-up plea. We sent a plea agreement out to Mr. Foster, and since he's no longer in the case, he's not available for the Court to inquire about that. And I was actually looking through the file to see if I could find what plea offer we sent him, in terms of what drug amount we sent, but I don't have a copy of the file [sic]. But that's really neither hear [sic] nor there because he didn't sign the plea agreement.

[Id. at 6-7]. Counsel for the Government went on to explain to the Court why the Government would not be seeking a reduction in Petitioner's sentence based upon the assistance he provided to the Government:

> [T]here's not going to be a 5K motion in this case, mainly, for two reasons, one of which is he pled straight up….
>
> So that's one reason. And the other reason is, although he gave a debrief and it was truthful, and I think he was cooperative, it just didn't yield anything, and so we generally don't give 5Ks on that basis anyway. But even if he had, we wouldn't have been in a position to offer him a 5K since there was no plea agreement.
>
> Again, Mr. Foster is not here, so I can't inquire about why they chose that route.

[Id. at 7-8]. The Government went on to argue that the drug quantity of 500 grams attributed to Petitioner was supported not only by Petitioner's statements to agents but also by the amount of drugs that was possessed by other members of the conspiracy which was reasonably foreseeable to

5

Petitioner. [Id. at 9]. Counsel for the Government went on to state as follows:

> I do think it's unfortunate that this was a straight-up plea rather than, you know, a plea by plea agreement. Like I said, I don't remember the amount that we would have agreed to recommend to the Court. It probably would have been less than [the 500 grams attributed to Petitioner in the PSR], but he chose this route, presumably, to preserve appeal rights. I don't know.

[Id. at 10]. The Court overruled Petitioner's objections related to the amount of cocaine base attributable to Petitioner in the conspiracy. [Id. at 15]. Calculating Petitioner's offense level to be 34 and a criminal history category of V, the Court determined the appropriate Guidelines range to be 235 to 293 months. [Id.].

Following the Court's pronouncement of the Guidelines range, counsel for the Government expressed his disappointment that Petitioner was not being sentenced in the range of 151 to 158 months' imprisonment, stating, "I don't understand what the strategy was by pleading straight up rather than signing a plea agreement, but that's where we are, so I hope the Court will give him the bottom of the guideline range." [Id. at 19].

When given the opportunity by the Court to allocute, Petitioner stated, in pertinent part, as follows:

I thought I was doing the right thing by helping these officers out. Why I got – I did not know at the time I was signing a guilty plea. I would never sign – he never came to me about a plea bargain. Why that is, I don't know. When I came – when I came up there to sign my papers, I thought I was signing a guilty plea, and if I was signing a guilty plea, I was signing 50 grams to 150 grams.

[Id. at 18].

After hearing the further arguments of counsel, as well as the statements of Petitioner, the Court reconsidered its original calculation of the appropriate Guidelines range:

> The Court has reconsidered its original ruling concerning the appropriate guideline range and offense level, and taking into consideration the sentences entered by the Court – by this Court as to the other defendants involved in the conspiracy and the relative involvement of the parties and, particularly, the complete and total cooperation of this defendant and its effect on the solving of the problems related to an extensive conspiracy over a period of years and what appears to be a breakdown in representation of the defendant by his then attorney, the Court concludes that this is a case in which the Court should exercise its discretion in reaching a fair and just sentence in the case, particularly after considering the 3553 factors as the Court is required to do.
>
> So rather than [an] offense level of 34, the Court will depart to an offense level of 33 – or 32 – excuse me – Criminal History Category V, which gives a guideline range of 188 to 235 months.

[Id. at 19-20]. The Court thereafter sentenced Petitioner to a term of two hundred (200) months' imprisonment. [Criminal Case No. 1:06-cr-00251, Doc. 260: Judgment in a Criminal Case at 2].

Following entry of Judgment, Petitioner noted a timely appeal to the United States Court of Appeals for the Fourth Circuit. [Criminal Case No. 1:06-cr-00251, Doc. 262]. On appeal, Petitioner's appellate counsel, Sue Genrich Berry, filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), but also asserted that Petitioner received ineffective assistance of counsel at the trial level because a plea offer from the Government was not disclosed prior to his decision to enter his plea of guilty. See United States v. Hunter, No. 08-4523, 2008 WL 5599619 (4th Cir. 2008) (unpublished). Regarding this issue, the Fourth Circuit stated as follows:

> Although [Petitioner] contends he was denied
> effective assistance of counsel because he was
> never presented with a proposed plea agreement that
> would have resulted in a lower sentencing guidelines
> range, see United States v. Blaylock, 20 F.3d 1458,
> 1465-66 (9th Cir. 1994) (failing to inform defendant of
> plea offer was unreasonable assistance), because it
> does not "conclusively appear on the record that
> [Petitioner] was denied effective assistance, this
> claim should be asserted by [Petitioner] in a post-
> conviction motion under 28 U.S.C. § 2255 (2000)
> rather than on direct appeal. See United States v.
> Richardson, 195 F.3d 192, 198 (4th Cir. 1999) ("A

claim of ineffective assistance of counsel should be raised by a habeas corpus motion under 28 U.S.C. § 2255 in the district court and not on direct appeal.") (internal quotation marks, brackets and citation omitted). During the plea colloquy, [Petitioner] informed the district court that he discussed possible defenses with trial counsel and that he was entirely satisfied with his attorney's services. These declarations "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see United States v. DeFusco, 949 F.2d 114, 199 (4th Cir. 1991) (holding that defendant's statement at Rule 11 hearing that he was neither coerced nor threatened was "strong evidence of the voluntariness of his plea").

Moreover, although the Government indicated at sentencing that a plea agreement was sent to trial counsel prior to the Rule 11 hearing, a proposed plea agreement was never mentioned by the Government at the Rule 11 hearing, the Government could not produce a copy of the proposed plea agreement at sentencing, and it is unclear whether trial counsel ever received a plea agreement – assuming one existed – from the Government. Without evidence from trial counsel regarding his failure to present the proposed plea agreement to [Petitioner], consideration of this issue is premature. See DeFusco, 949 F.2d at 120-21 ("[I]t would be unfair to adjudicate [an ineffective assistance claim] without any statement from counsel on the record.").

Accordingly, the Fourth Circuit affirmed Petitioner's conviction and sentence.

Id. The present Section 2255 motion followed.

## II. DISCUSSION

In his motion, Petitioner raises various claims of ineffective assistance of counsel, and all claims with any potential merit stem from the failure of his trial counsel to share a proposed plea agreement from the Government prior to the entry of his guilty plea.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to the assistance of counsel for his defense. U.S. Const., amend. VI. "The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012). It is well-established that the right to effective counsel extends to all critical stages of the criminal proceeding, including the negotiation of a plea bargain. See Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d (1985); Padilla v. Kentucky, __ U.S. __, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." Id. at 689, 104 S.Ct. 2052; see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983). In considering the prejudice prong of the Strickland analysis, the Court "can only grant relief . . . if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, the Court "need not consider the performance prong." Id. at 1290 (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052).

Here, Petitioner makes several claims of ineffective assistance of counsel against both of his trial attorneys. With respect to Mr. Foster, Petitioner claims that he "incompetently advise[d] the petitioner to plead guilty based on incompetent legal advice and inducing the petitioner to plead through coercion, persuasion, duress and oral bargaining not memoralized in his final written Plea Agreement." [Doc. 1 at 2].

Regarding Petitioner's claim that Mr. Foster provided incompetent legal advice in order to secure a guilty plea, Petitioner fails to state what faulty advice was provided or how such advice induced him to plead guilty.

Moreover, Petitioner does not assert that but for this incompetent advice, there would have been a different outcome. When evaluating a petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court requires that petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler v. Cooper, __ U.S. __, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Absent a showing from Petitioner that but for Mr. Foster's unspecified incompetent advice the outcome of the plea proceeding would have been different, Petitioner's claim for ineffective assistance must necessarily fail.

Petitioner also claims that his guilty plea was coerced and made under duress. He further contends that he believed he was pleading, pursuant to a plea bargain, to a drug amount between 50 grams and 150 grams. [Doc. 1 at 5; see also Criminal Case No. 1:06-cr-00251, Doc. 275: Sentencing Transcript at 18]. These arguments, however, are clearly refuted by the Rule 11 colloquy administered by the Magistrate Judge, wherein Petitioner agreed under oath that his guilty plea was voluntary and not the result of any coercion, threats or promises; that his willingness to plead guilty was not the result of any prior discussions between his attorney and the attorney for the

Government; and that he and the Government had not entered into a plea agreement of any kind or nature in this case. In evaluating post-conviction claims of ineffective assistance, statements previously made under oath in the course of a Rule 11 proceeding are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299; Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (noting that a defendant's sworn statements during a Rule 11 hearing "carry a strong presumption of verity"). Petitioner makes no effort to overcome the strong presumption in favor of accepting the verity of his sworn statements made at the Rule 11 hearing. These arguments, therefore, are without merit.

Petitioner further alleges that Mr. Foster was incompetent in failing to preserve for the record "oral bargaining not memorialized in his final written plea agreement." [Doc. 1 at 2]. Again, Petitioner fails to assert what these undisclosed agreements might have been or whether counsel's allegedly deficient performance altered his decision to plead guilty. In any event, however, it is clear from the record that Petitioner pled guilty without the benefit of any "written plea agreement." At the Rule 11 hearing, Petitioner indicated that he understood that he was pleading guilty without a plea agreement "of any kind or nature." [Criminal Case No. 1:06-cr-00251, Doc. 274-1: Rule 11 Transcript at 14]. Petitioner's statements during the Rule 11

hearing clearly establish that there was no written plea agreement with the Government.  Thus, Petitioner's argument regarding his alleged written plea agreement is without merit.

The main crux of Petitioner's motion appears to be his claim that Mr. Foster rendered ineffective assistance when he failed to convey a plea offer from the Government to Petitioner.[2]  [See Doc. 1 at 10-11].  Where a petitioner asserts ineffective assistance of counsel based on counsel's failure to communicate a plea offer, Strickland requires that a petitioner first "demonstrate a reasonable probability that [he] would have accepted the earlier plea had [he] been afforded effective assistance of counsel."  Frye, __ U.S. at __, 132 S.Ct. at 1409.  In addition to showing that he would have accepted the earlier plea offer, the petitioner must show that, "if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."  Id. at 1410.

---

2 The Court notes the obvious contradictions in Petitioner's positions.  On the one hand, he argues that he had an oral plea agreement for a joint recommendation regarding drug quantities but counsel was ineffective for having failed to memorialize such agreement in writing.  On the other hand, Petitioner argues that he did not know the terms that had been offered by the Government.  Nonetheless, the record is clear that Petitioner entered his plea at the Rule 11 hearing with the expressed understanding that he had no plea agreement, whether written or oral.

With regard to the deficient performance prong of <u>Strickland</u>, counsel for the Government indicated at the sentencing hearing that he had forwarded a plea offer to Petitioner's counsel prior to the entry of the guilty plea, although the Government did not have a copy of such offer in its file and counsel for the Government could not recall its terms.  Whether Mr. Foster actually communicated any such offer to Petitioner, however, is frankly unclear.  While Petitioner contends that Mr. Foster failed to convey any plea offer to him [<u>see</u> Doc. 1 at 10], Petitioner also appears to contend that he had entered into some kind of plea bargain with the Government for a lesser drug quantity [<u>see</u> Doc. 1 at 2 (arguing that Mr. Foster "failed to give the court full disclosure of the plea bargain" at the Rule 11 hearing)].

Assuming that Mr. Foster in fact failed to advise Petitioner of the plea offer prior to the guilty plea, however, Petitioner fails to allege (much less demonstrate) a reasonable probability that he would have accepted the plea offer.  <u>See</u> <u>Frye</u>, __ U.S. at __, 132 S.Ct. at 1409.  In fact, Petitioner has alleged that he knew of the offer [Doc. 1 at 2], but he knowingly pleaded guilty without a plea agreement of any kind [Criminal Case Doc. 127], thus implying he *did not* accept it (for whatever reason).  More importantly, however, even if Petitioner could make such a showing, Petitioner cannot demonstrate a reasonable probability that this plea agreement would have

been accepted by the Court. Petitioner contends that the plea offer contained a stipulation to a lesser drug quantity, which would have resulted in a reduced sentence. [See Doc. 1 at 3-4]. Even assuming that the parties had reached a stipulation regarding the amount of drugs attributable to Petitioner, however, such stipulation would only have been a joint recommendation to the Court and would not have been binding on the Court. See, e.g., United States v. Ponce, 50 F. App'x 614, 621 (4th Cir. 2002) (noting that where parties enter into non-binding plea agreement, district court is "free make an individual finding as to drug quantity and to impose a sentence upon [defendant] in accordance with its findings"). Here, the PSR clearly supports a finding that the amount of cocaine base attributable to Petitioner was at least 500 grams. In light of this evidence, any hypothetical stipulation reached by the parties in a plea agreement regarding a lesser amount of drugs would have been rejected by the Court, and Petitioner would have been sentenced in accordance with the evidence of record. The only basis on which Petitioner argues that the evidence of drug quantity would have been rejected was the manner in which the information was obtained. That, however, was fully argued at the sentencing hearing, refuted by the Government, and rejected by the Court. As such, Petitioner has shown no Strickland prejudice. Moreover, the Court varied downward by two

offense levels based on the arguments of counsel that Petitioner may have had an opportunity for a lower sentence if he had entered into a plea agreement. Petitioner has presented nothing whatsoever to indicate that he could have received a sentence lower than the one *actually received* if he had entered into a plea agreement. For these reasons, the Court concludes that Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>, and therefore his ineffective assistance claims regarding the performance of Mr. Foster must be dismissed.

Petitioner also asserts ineffective assistance claims against his counsel at sentencing, Ms. Allison. Specifically, he contends that Ms. Allison failed to object to the portion of the PSR that listed his attributable drug amount to be 500 grams. [Doc. 1 at 5]. Contrary to Petitioner's argument, however, Ms. Allison *did* object, both orally and in writing, to the drug amount calculations in the PSR. Accordingly, this claim is without merit.

Petitioner also contends that Ms. Allison's failure to subpoena and cross-examine the case agent from the DEA about the drug amount constituted deficient performance. [Doc. 1 at 9-10]. Again, Petitioner fails to allege what this cross-examination might have yielded or how the absence of such information somehow prejudiced him. The "Offense Conduct" section of the PSR (to which the Petitioner stipulated subject to the written objections)

was taken from reports authored by and interviews of the DEA agent. [See Criminal Case No. 1:06-cr-00251, Doc. 245: PSR at 4]. Petitioner fails to assert how calling the DEA agent as a witness to testify under oath to what was already contained in the PSR would have been helpful to the Petitioner in any way. More particularly, Petitioner does not show how calling this witness to testify would have resulted in a lighter sentence.

Finally, Petitioner faults Ms. Allison for failing to request a motion to continue the sentencing hearing to "straighten out the dispute on Hunter's Plea Agreement." [Doc. 1 at 12]. As discussed above, there was no plea agreement about which to have a dispute. Petitioner fails to allege what benefit could have been obtained by receiving a continuance of the sentencing hearing. Accordingly, this claim too is without merit.

Based on the foregoing, the Court finds that Petitioner's Motion to Vacate, Set Aside or Correct Sentence should be denied and dismissed. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability on the claims which are denied and dismissed as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 1039-1041, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that a dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Respondent's Motion to Dismiss [Doc. 6] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Section 2255 Motion [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 17, 2013

Martin Reidinger
United States District Judge